In re Connie Sue TAYLOR, John Edward Taylor, Erwin Joe Taylor, Maryetta Margaret Taylor, Felix Christopher James Taylor and Samuel J. Michael Taylor, minors under the age of seventeen years.

Dewey SMALLEN, Juvenile Officer for the County of St. Francois, State of Missouri, Respondent,

v.

John Edward TAYLOR and Enzie Bonetta Taylor, Appellants.

No. 32515.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1967.

474

William C. Bernhardt, DeSoto, for appellants.

Jack Moore, Pros. Atty., Charles G. Hyler, David L. Colson, Asst. Pros. Attys., Farmington, for respondent.

TOWNSEND, Commissioner.

Statutory action for termination of parental rights, brought by petition of the Juvenile Officer of the Juvenile Court of St. Francois County, filed May 25, 1965. From a judgment terminating such rights the parents appeal.

Petitioner's evidence here pertinent consisted of the sworn testimony of himself and Miss Gibson, child welfare worker in St. Francois County with the Missouri Division of Welfare, and nine exhibits. Each of such exhibits is a report prepared by Miss Gibson addressed to the Juvenile Judge of St. Francois County relating to the situation of the Taylor family and running from March 1963 to May 1965.

From the record it appears that the attention of the Juvenile Officer was first directed to the condition of the family of John Edward and Enzie Taylor by the fact that the youngest child of the Taylors named

Sherry (not a party to these proceedings), aged about four months, was a patient in the Bonne Terre Hospital suffering from malnutrition and pneumonia. Temporary care and custody of this baby was given to the St. Francois County Welfare Office on March 19, 1963. The situation of the balance of the family was referred to the child welfare service on the same day by the Juvenile Officer and on that day he and Miss Gibson visited the Taylor home, a two-room house without plumbing. The six children, subjects of this proceeding, were at home with Mrs. Taylor.

For reasons that will readily become apparent we enter into no detailed description of the conditions under which this family lived or of the care and attention (or lack thereof) of these six children by their parents.

Upon the occasion of the first visit on March 19, 1963, the visitors explained the purpose of their visit and it was agreed that the case-worker would make follow-up visits in an endeavor to aid the family in attaining better standards of living. Weekly visits were made for two to three months. During that three months period there was some slight improvement in cleaning up the house and disposing of litter. The family then moved to a new location which had some plumbing. After removal to the new location, "the situations of cleanliness and care of the children did not appreciably improve," according to the case-worker. After a time there was regression to the state found initially.

Thereafter there were numerous complaints from the neighborhood and school alleging neglect of the children and low standards of living. In March 1964 the Juvenile Court requested an investigation as to the welfare of the children and under date of March 16, 1964, Miss Gibson rendered her report to the court, stating that the house was in a deplorably dirty condition, the children were dirty and "the stench of an unkept house was much in evidence."

Under date of April 17, 1964, the Juvenile Court entered its order finding that the six children were neglected within the meaning of the statute, placing their care and custody in the Division of Welfare and ordering the case-worker, the county health nurse and the sheriff's office to effect the change of custody immediately; the order was executed the same day.

On May 11, 1964, parental rights in the baby Sherry were terminated; she had been placed in the home of a childless couple with possibilities of adoption.

Among appellants' assignments of error they assert: "3. The court erred in failing to find the state did not prove one or more of the jurisdictional requirements of Section 211.411." Complementary to this charge is the further assignment: "5. The court erred in finding the parents had refused to give the children necessary care and protection during a time the court had ordered the care and protection of the children in the Welfare Department."

The action for termination of parental rights is designed to extinguish forever the pre-existing legal rights of the parents with respect to their child and is the subject of specialized legislation. The power of the juvenile court to effectuate such a result is in its entirety the creation of the statute; it does not otherwise exist. Therefore, the terms of the statute must be strictly applied.

The pertinent statute is Section 211.441 which provides:

"1. The juvenile court may, upon petition filed * * * terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

   *     *     *     *     *     *

(2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition

\* \* \* \* \* \*

(b) The parents have willfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection;

(c) The parents, being financially able, have willfully neglected to provide the child with the necessary subsistence, education or other care necessary for his health, morals or welfare or have neglected to pay for such subsistence, education or other care when legal custody of the child is lodged with others; \* \* \*".

Under such statutory terms the power of the court is dependent upon the existence of one or more special conditions. In order to create that power, any such special condition must have existed for the one year immediately prior to the filing of the petition. We proceed to consider the alternative or cumulative grounds upon which the court may decree the extinguishment of the parents' rights.

■ The petition in this proceeding was filed on May 25, 1965, although summons did not issue until August 24, 1965 and was served August 26, 1965. For thirteen months preceding the filing of the petition the children had been in the custody of the Division of Welfare, placed there by an order of the Juvenile Court. As to the latter order we indulge in the presumption of regularity until the contrary is shown. The case-worker's report of May 18, 1965, shows that appellants were ignorant of the various locations of the children after they were placed in the custody of the Division of Welfare. The parents' physical power and their legal freedom to give care and support to their children while the latter were being held incommunicado under order of the court were non-existent. Under such circumstances it cannot be said that the parents neglected the children or refused to give them care and protection. The evidence therefore gives no basis for the Juvenile Court's finding that the parents willfully, substantially and continuously neglected the children and refused to give them neces-

sary care and protection for more than one year immediately prior to the filing of the petition.

■ Turning to the next alternative provision upon which the court's power depends, we see that it specifies two conditions which must exist, namely, that the parents have not paid for the subsistence and care of their children while the latter are in the custody of others and that the parents have had the financial ability to make such payment, all in the year immediately preceding the filing of the petition. The record here is completely lacking in any evidence relating to either of these conditions precedent, although it might readily be inferred that the parents have not made such payment as the statute specifies. No such inference could be indulged regarding the ability of the parents to pay. In any event the statute demands clear, cogent and convincing evidence of the existence of these conditions precedent; that evidence is lacking. In respect to this statutory alternative, the finding of the Juvenile Judge was that the parents had willfully neglected to provide the children with the necessary subsistence, education and other care necessary to their health, morals and welfare; that finding was general, and did not relate to any particular period. Hence it was not responsive to the statutory requirement that such omission occur in the year immediately prior to the filing of the petition.

Certain other grounds for terminating parental rights are alleged in the petition. One such allegation did not fall within the terms of Section 211.441. There was no evidence to support another allegation framed in some of the terms of that section. As to these other alleged grounds for termination no findings were made by the trial court.

Accordingly we find that there was no evidentiary basis for the finding of willful and continuous neglect and refusal to give the children necessary care and protection for one year or more immediately prior to the filing of the petition; similarly we find

that there was no evidence that could have supported a finding of ability to pay and failure to pay for subsistence, education or other care when legal custody of the children was lodged with others for the one year immediately prior to the filing of the petition, if such a finding had been made. The Juvenile Court was therefore wholly lacking in the statutory power to decree a termination of parental rights.

Appellants' other assignments of error do not warrant the consideration of the Court.

The motion to dismiss the appeal is over-ruled.

The judgment is reversed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is reversed.

ANDERSON, P. J., RUDDY, J., and THEODORE McMILLIAN, Special Judge, concur.